**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 26-117** |
| **ALBERTO RODRIGUEZ**<br>**a/k/a "Cesar Soto"** | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Alberto Rodriguez, a/k/a Cesar Soto, awaits sentencing after using two identities and two Social Security numbers to commit fraud for decades. Specifically, the defendant used one identity to fraudulently obtain disability benefits from the Social Security Administration ("SSA") while simultaneously concealing his employment and income under a second identity. On two separate occasions, he also applied for a passport under his second identity while failing to disclose his concurrent use of his other identity. For approximately 15 years, the defendant engaged in this dual-identity fraud scheme. For these reasons, as well as for the reasons provided below, the government recommends a sentence within the advisory guideline range, absent any basis for a below-guideline sentence addressed in the supplemental sealed attachment to this sentencing memorandum**.**

A sentencing court follows a two-step process, first calculating the range under the Sentencing Guidelines, and then considering that range along with all pertinent 18 U.S.C. § 3553(a) factors in determining the appropriate sentence. *See* USSG § 1B1.1 (Nov. 1, 2025).[1]

---

[1] Courts previously followed a three-step process, in which the court first calculated the guideline range, then next ruled on motions for departure, before considering the 3553(a) factors. *See United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). In an extensive amendment to the

At the second step of the sentencing process, "[t]he record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted). *See also Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision making authority."); *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing.").

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors.

## I. **BACKGROUND**

On April 16, 2026, the defendant pleaded guilty to the three-count information, charging him with one count of theft of government funds, in violation of 18 U.S.C. § 641, and two counts of Passport Fraud, in violation of 18 U.S.C. § 1542. During his plea colloquy, the defendant admitted that he has used two identities and two separate social security numbers to fraudulently obtain Social Security benefits. He further admitted that he attempted to obtain two separate United States passports using his second identity while failing to disclose his use of another

---

Guidelines effective November 1, 2025, the Sentencing Commission eliminated the departure provisions in the manual and dictated the two-step process described above.

identity and Social Security number. This Court has scheduled sentencing for November 18, 2026.

## II. SENTENCING CALCULATION

### A. Statutory Maximum and Mandatory Sentence

For Counts 1 (theft of government funds): 10 years' imprisonment, 3 years' supervised release, restitution of $91,424.00, a $250,000 fine, and a $100 special assessment.; and

For Counts 2- 3 (passport fraud, per count): 10 years' imprisonment, 3 years' supervised release, a $250,000 fine, and a $100 special assessment.

**Total Maximum Sentence**: 30 years' imprisonment, 3 years' supervised release, restitution in the amount of $91,424.00, a $750,000 fine, and a $300 special assessment.

### B. Sentencing Guidelines Calculation

The Probation Office correctly calculated the defendant's advisory guideline range as follows: For Count One, theft of government funds, in violation of 18 U.S.C. § 641, the base offense level is six. U.S.S.G. §2B1.1. As the defendant knowingly caused over $55,000 but less than $150,000 in loss, 6 additional points were added to his guideline score. U.S.S.G. § 2B1.1(b)(1)(D). For a total offense level of 12.

The defendant also committed passport fraud, as charged in Counts Two and Three. The base offense level for Passport Fraud is eight. U.S.S.G. §2L2.2(a). Under the new U.S.S.G. sentencing guidelines effective November 1, 2026, the defendant's offense level will not increase for this offense.

The defendant clearly demonstrated acceptance of responsibility for his crime, resulting in a two-point reduction. U.S.S.G. § 3E1.1(a).

The defendant has a prior criminal conviction, resulting in two criminal history points. The defendant therefore has a criminal history score of 2, resulting in a Criminal History Category of II.

The resulting total offense level is 10, with a Criminal History Category of II, for an advisory guidelines range of 8 to 14 months.

## III. ANALYSIS

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 569 U.S. 530, 542 (2013) (quoting *Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 569 U.S. at 543. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.* at 544.

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to

avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

### A. <u>Consideration of the 3553(a) Factors</u>

For more than four decades, the defendant, Alberto Rodriguez, used two separate identities and two Social Security numbers. Although born as "Cesar Soto," the defendant used the name and identity "Alberto Rodriguez" in 1973 and obtained his first Social Security number under that name. Eight years later, in 1981, he applied for another Social Security number, under his birth name, falsely attesting that he had never been issued an SSN before. Through these false statements, he succeeded in establishing two distinct identities with the SSA. He also maintained state identification and driver's licenses under both identities, further facilitating his long-running dual-identity fraud.

Beginning in 2009, the defendant used the "Alberto Rodriguez" identity to apply for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). In support of these applications, he falsely claimed to be disabled and unable to work. Based on his misrepresentations, SSA approved his claims and paid him monthly disability benefits. From 2009 through 2024, the defendant received approximately $91,424 in federal disability and SSI benefits to which he knew he was not entitled.

While collecting disability benefits under the "Alberto Rodriguez" identity, the defendant was regularly employed under his original birth name, "Cesar Soto," earning wages and intentionally concealing his employment from the SSA. He was legally required to report any work activity to SSA but avoided doing so by maintaining his dual identities. His concealment

was deliberate and sustained, spanning multiple employment periods between 2010–2011 and 2021–2024.

The defendant also used his second fraudulent identity to attempt to obtain federal identification documents. He twice applied for United States passports under the "Alberto Rodriguez" identity while failing to disclose his use of another Social Security number and legal name.

In 2025—while still benefiting from his long-running disability fraud—the defendant applied for SSI benefits again, under the "Cesar Soto" identity, falsely affirming under penalty of perjury that he had never used any other Social Security claim number. SSA denied the application due to excess resources, but the false statements further demonstrate the defendant's greed and continued intent to deceive.

The defendant maintained this dual-identity scheme for over forty years, and for at least fifteen years used it to fraudulently obtain federal benefits. He repeatedly lied to federal agencies, concealed his income, exploited government programs intended for indigent and disabled individuals, and took affirmative steps to profit from his unlawful conduct.

Although the defendant stole a substantial sum of money from the SSA, it appears he largely used those funds for basic living expenses, rather than on a lavish lifestyle. Importantly, the defendant admitted his criminal conduct and pled guilty to the offense immediately.

Nevertheless, Section 3553(a) factors support a guideline-range sentence, a part of which could be accomplished with a term of home incarceration or probation. The need for a Guideline sentence is made all the more acute here, where the defendant's commission of multiple passport fraud crimes did not alter his Guideline range calculation. In this sense, the defendant's passport crimes would be without consequence. Yet, by statute, the sentence imposed is required "to

reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." § 3553(a)(2). Obtaining a false passport undermines the integrity of of that system. Likewise, the benefits programs administered by the government suffer substantial fraud every year. While the defendant's individual conduct did not put SSA or the passport system at risk, the cumulative effect of similar frauds poses a substantial threat to the integrity of these programs. For approximately fifteen years, the defendant lied to SSA in order to steal from taxpayers. He compounded that fraud by trying to obtain false passports. A guidelines sentence will ensure just punishment, proper supervision, and repayment of restitution.

General deterrence is also a significant consideration. Although the defendant's age and circumstances may make specific deterrence a lesser concern, the sentence must deter others from engaging in similar, long-term fraud schemes. A meaningful sentence is needed to signal that exploiting federal benefits programs carries serious consequences.

A guideline-range sentence will also promote consistency with sentences imposed nationwide on similarly situated offenders, as required by § 3553(a)(6). There is no basis in this case to modify the sentence to provide educational, vocational, medical, or other treatment needs. § 3553(a)(2)(D).

Restitution is an important component of this case. § 3553(a)(7). The government asks this Court to consider the impact of the defendant's crimes upon the benefits programs administered by Social Security, as well as the taxpayers who fund benefits programs. The defendant, through his guilty plea, admitted stealing $91,424 from the program and agreed to provide full restitution. The government respectfully requests this Court order restitution be paid to:

Social Security Administration
Debt Management Section
P.O. Box 2861
Philadelphia, Pennsylvania 19122

Therefore, in sum, all of the appropriate considerations of sentencing favor the imposition in this case of a within-guideline sentence. As noted, the Sentencing Guidelines present "the lodestone of sentencing," *Peugh*, 569 U.S. at 544, and that guide is once again persuasive in this case.

**B. <u>Supervised Release</u>.**

Pursuant to Sections 5D1.1 and 5D1.2 of the Sentencing Guidelines, as amended effective November 1, 2025, the Court is directed to conduct an "individualized assessment" when deciding whether to impose a term of supervised release, and if supervised release is imposed, how long the term should be. The Court is further directed to state in open court its reasons for imposing or not imposing a term of supervised release, and its reasons for the length of a term imposed. Further, Section 5D1.3 sets forth mandatory conditions of a term of supervised release, and "discretionary conditions" that the Court may impose, following the same individualized assessment.

The guideline commentary, consistent with 18 U.S.C. § 3583(c), provides that the "individualized assessment" should rest on consideration of the same sentencing factors under 18 U.S.C. § 3553(a) that are considered with respect to a term of imprisonment, with the exception of Sections 3553(a)(2)(A) (the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense") and 3553(a)(3) ("the kinds of sentences available"), which do not apply with regard to supervised release decisions.

Here, should this Court impose a sentence of incarceration, a supervised release term of two years is appropriate. As explained above, the defendant engaged in this scheme for decades and will have substantial restitution to the SSA. A term of supervised release in this case advances the goals of sentencing to deter criminal conduct, § 3553(a)(2)(B), protect the public, § 3553(a)(2)(C), and ensure restitution it pursued and monitored, § 3553(a)(7).

## IV. CONCLUSION

For these reasons and subject to any that may be presented at the defendant's sentencing hearing and in the Sealed Supplement, the government believes that a guideline sentence, is appropriate in this case.

Respectfully submitted,

DAVID METCALF
United States Attorney

*/s Megan Curran*
MEGAN CURRAN
Special Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that this Sentencing Memorandum has been served on the Filing User identified below through the Electronic Case Filing (ECF) system:

Kathleen Gaughan, Esquire
Assistant Federal Defender
Defender Association of Philadelphia
The Curtis Center Building
601 Walnut Street – Suite 540 West
Independence Square West
Philadelphia, PA 19106

*/s Megan Curran*
MEGAN CURRAN
Special Assistant United States Attorney

DATED: November 10, 2026.